2001 ME 121

**Ann STAPLES**

v.

**Mylon STAPLES.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 25, 2001.

Decided July 25, 2001.

Sophie L. Spurr, Blue Hill, for plaintiff.

Barry K. Mills, Hale & Hamlin, L.L.C., Ellsworth, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Mylon Staples appeals from the judgment of the Superior Court (Hancock County, *Gorman, J.*) affirming the order of the District Court (Ellsworth, *Anderson, J.*) denying Mylon's motion to amend a qualified domestic relations order (QDRO). Mylon contends that the court erred in concluding that the parties' 1990 divorce judgment and settlement agreement entitle Ann Staples to one-half of Mylon's pension benefits as of the date of his retirement, rather than as of the date of the divorce judgment. We affirm the judgment.

[¶ 2] After twenty-five years of marriage, Ann and Mylon Staples were divorced in District Court (*Staples, J.*). The divorce judgment refers to the parties' settlement agreement with the following language: "The Court finds that the parties executed a property settlement agreement dated October 30, 1990, which is attached hereto and incorporated [ ] herein by reference. Said property settlement shall have the full force and effect of a court order."

[¶ 3] The divorce judgment recites that Mylon is employed by Champion International and has "a vested but not yet matured pension." The judgment goes on to state:

It is ORDERED that Plaintiff, Ann Staples, is entitled to fifty percent (50%) of all pension benefits accrued to Defendant during the years of his marriage to Plaintiff, and Plaintiff is hereby granted fifty percent (50%) of each monthly annuity payment when Defendant's retirement benefits become payable to him, for as long as he receives benefits.

The settlement agreement provides:

Husband and Wife agree that Wife shall be entitled to one-half of husband's Champion International Salaried Retirement Plan 001 when he retires from Champion International Corporation. Husband shall authorize Champion's Pension Plan Department to pay Wife directly for her share of said pension benefits. Said benefits shall terminate upon Wife's death or remarriage.

[¶ 4] Almost nine years after the divorce, Ann filed a proposed QDRO, which the District Court (*Staples, J.*) signed, and it was entered in the docket on April 9, 1999. Paragraph 5(a) of the QDRO states:

The amount of the Alternate Payee's entitlement shall be fifty percent (50%) of the Participant's vested Accrued Benefit (as the term is defined in the Plan).

On April 21, 1999, Mylon filed a motion to amend the QDRO. Mylon sought to amend paragraph 5(a) to provide that Ann's benefits under the pension plan are to be computed as of the date of the divorce judgment.

[¶ 5] At the hearing on Mylon's motion, the District Court (*Anderson, J.*) asked the parties several times whether they would like to submit testimonial evidence. Ann asked to submit evidence to show the intent of the parties at the time of the divorce. Mylon argued that testimony was unnecessary and would improperly lead to a relitigation of the nine-year-old divorce. He maintained that the only issue before the court was one of law, that is, whether the divorce court had the power to order that Ann receive any part of Mylon's pension earned after the divorce judgment, and he argued that the court did not have the power.

[¶ 6] At Mylon's request, the trial court did not hear testimony and based its decision solely on the documents. The court found that the divorce judgment was ambiguous on its face because it provides that Ann is to receive fifty percent of the pension benefits that accrued during the marriage, but also grants her fifty percent of each monthly payment upon Mylon's retirement. The court found that the settlement agreement resolves the ambiguity because it does not limit Ann's portion to fifty percent of the benefits accrued during the marriage. The court further concluded that the divorce court had the power to order that the pension benefits be split equally at the time of Mylon's retirement because in so doing it was only ratifying the agreement of the parties, and parties can agree to distribution and support which a court might not be able to order in the absence of an agreement. The court denied Mylon's motion to amend the QDRO.

[¶ 7] Mylon appealed to the Superior Court which affirmed the District Court's decision. We review the decision of the District Court directly. *Doucette v. Washburn*, 2001 ME 38, ¶ 7, 766 A.2d 578, 581. We will not overturn the District Court's denial unless its factual findings are clearly erroneous; it has erred as a matter of law; or it has abused its discretion. *Id.*

[¶ 8] Mylon contends that the District Court erred in not holding a testimo-

nial hearing and in finding that Ann is entitled to fifty percent of Mylon's pension as of the date of his retirement.[1] Mylon several times expressed to the court that testimony was unnecessary, and it was at his urging that the court decided not to hear testimony. Mylon waived an evidentiary hearing and cannot now complain that he did not receive one.

[¶ 9] Whether the divorce judgment is ambiguous is a question of law. *Austin v. Austin*, 2000 ME 61, ¶ 4, 748 A.2d 996, 998. The court did not err in finding an ambiguity. The judgment provides that Ann is to receive fifty percent of the pension benefits that accrued *during* the marriage, but it also states that she is to get fifty percent of each monthly payment upon Mylon's retirement. The divorce judgment is susceptible to more than one reasonable interpretation. Under one interpretation, Ann's share of the pension benefits stopped accruing as of the date of the divorce; under the other interpretation, she gets one-half of the amount accrued to the date of Mylon's retirement. The two possible interpretations fit the classic definition of an ambiguity. *See Blanchard v. Sawyer*, 2001 ME 18, ¶ 4, 769 A.2d 841, 843.

[¶ 10] Because Mylon persuaded the court not to hear the testimony of the parties concerning the ambiguity in the divorce judgment, the court turned to the only piece of evidence before it to shed light on the ambiguity. That evidence is

---

1. We do not address Mylon's other issues on appeal which are (1) whether the Superior Court erroneously concluded that he had not demonstrated a clerical error, and (2) whether the Superior Court erred by applying the "clearly erroneous" standard in its review of the District Court's decision. The Superior Court found that Mylon's motion could not be granted because, according to its terms, it was brought pursuant to M.R. Civ. P. 59 and 60(a). The Superior Court ruled that as a

Rule 59 motion, it was untimely, and as a Rule 60(a) motion, it failed because there was no clerical error. We do not address these issues because we review the District Court's order directly. Ann did not raise either issue in the District Court, and, thus, she has failed to preserve them. Likewise, we do not address Mylon's argument relating to the Superior Court's standard of review because we review the District Court's order directly.

the settlement agreement which itself contains no ambiguity. It states that Ann is to receive one-half of Mylon's pension when he retires. It does not state that the one-half amount is to apply only to benefits that accrued as of the date of the divorce. The only limiting language in the provision is the statement that the benefits terminate upon Ann's death or remarriage. The District Court did not clearly err in its factual determination that the parties intended by the settlement agreement that Ann should receive one-half of Mylon's pension calculated as of the date of his retirement.

The entry is:

Judgment affirmed.

CLIFFORD, J., dissents and files opinion, with whom RUDMAN, J., joins.

CLIFFORD, J., with whom RUDMAN, J., joins, dissenting.

[¶ 11] I respectfully dissent. The divorce judgment contains language that specifically and unequivocally limits Ann Staples' share of Mylon Staples' pension benefits to fifty percent of what accrued to Mylon during the years of their marriage. The only evidence considered by the trial court in reaching its conclusion that Ann was to share in Mylon's *entire* pension was the settlement agreement and the divorce judgment. In my view, no language in either document sufficiently contradicts the provision in the divorce judgment limiting Ann to fifty percent of "benefits accrued ... during the marriage" to create an ambiguity.

[¶ 12] Title 19-A M.R.S.A. section 953 vests the court with the power to divide *marital* property, which is defined as "all property acquired by either spouse subsequent to the marriage ... and prior to a decree of legal separation." 19-A M.R.S.A. § 953 (1998 & Supp.2000). A provision allowing a spouse to share in the pension benefits of the other spouse that do not accrue until *after* the marriage has ended amounts to a distribution of the other spouse's *nonmarital* property. Such a provision is most unusual. If it is the intent of the court and the parties to provide for such an allocation, then the language used in the divorce judgment or settlement agreement to effectuate that intent would have to be much clearer and more specific than the provisions in this divorce judgment and settlement agreement.

[¶ 13] I would vacate the judgment and remand for the entry of a judgment providing that Ann's share of Mylon's pension benefits is limited to fifty percent of those benefits accrued during the marriage.